UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-22852-CV-UNGARO

JORGE GUTIERREZ on his own behalf
and on behalf of all similarly situated individuals,

      Plaintiff,

v.

SEASALT AND PEPPER, LLC, a Florida
Limited Liability Company,
CARLOS MIRANDA, individually, and
STEPHANE DUPOUX, individually,

      Defendants.
_____/

## SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JORGE GUTIERREZ ("Plaintiff"), on his own behalf and on behalf of those similarly situated, files this Complaint against Defendants, SEASALT AND PEPPER, LLC, ("SEASALT"), CARLOS MIRANDA, individually ("MIRANDA"), and STEPHANE DUPOUX ("DUPOUX") (collectively "Defendants"), and states as follows:

## NATURE OF THE ACTION

1.    Plaintiff alleges on behalf of himself and other similarly situated current and former Employees, compensated in whole or in part by service charges imposed on Defendants' customers, who elect to opt into this action, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are entitled to: (i) unpaid wages from Defendants for overtime work for which they did not receive proper overtime premium pay, as required by law; (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 et seq; (iii) the return of declaratory

relief pursuant to 28 U.S.C. §2201; and (iv) attorneys' fees and costs.

2.      Plaintiff further complains on behalf of himself, and a class of other similarly situated current and former employees of the Defendants, paid in whole or in part by compulsory service charges imposed on Defendants' customers, pursuant to Fed.R.Civ.P.23, that they are entitled to repayment of the gratuity amounts improperly retained by Defendants, pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.204(1), and Florida common law.

<u>**JURISDICTION**</u>

3.      Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, <u>et</u> <u>seq</u>., hereinafter called the "FLSA") to recover unpaid overtime wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorney's fees and costs.

4.      The jurisdiction of the Court over this controversy is based upon 29 U.S.C. §216(b).

5.      This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

6.      This Court has supplemental jurisdiction over Plaintiff's unjust enrichment and FDUTPA claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's unjust enrichment and FDUTPA claims.

7.       Venue is proper in this Court because Plaintiff resides within the District, Defendants maintain business operations within the District, and Plaintiff's claims accrued in this District.

## PARTIES

8.     At all times material hereto, Plaintiff was, and continues to be, a resident of Miami-Dade County, Florida.

9.     At all times material hereto, SEASALT was, and continues to be, a Florida Limited Liability Company.

10.     At all times material hereto, SEASALT was, and continues to be, engaged in business in Florida, with a principle place of business in Miami-Dade County, Florida.

11.     Based upon information and belief, at all times material hereto, MIRANDA was, and continues to be, an individual resident of Miami-Dade County, Florida.

12.     At all times material hereto, MIRANDA owned and operated SEASALT.

13.     At all times material hereto, MIRANDA regularly held and/or exercised the authority to hire and fire employees of SEASALT.

14.     At all times material hereto, MIRANDA regularly held and/or exercised the authority to determine the work schedules for the employees of SEASALT.

15.     At all times material hereto, MIRANDA held and/or regularly exercised the authority to control the finances and operations of SEASALT.

16.     By virtue of having regularly held and/or exercised the authority to: (a) hire and fire employees of SEASALT; (b) determine the work schedules for the employees of SEASALT; and (c) control the finances and operations of SEASALT, MIRANDA is an employer as defined by 29 U.S.C. 201 *et. seq.*

17.     Based upon information and belief, at all times material hereto, DUPOUX was, and continues to be, an individual resident of Miami-Dade County, Florida.

18.     At all times material hereto, DUPOUX owned and operated SEASALT.

19.     At all times material hereto, DUPOUX regularly held and/or exercised the authority to hire and fire employees of SEASALT.

20.     At all times material hereto, DUPOUX regularly held and/or exercised the authority to determine the work schedules for the employees of SEASALT.

21.     At all times material hereto, DUPOUX held and/or regularly exercised the authority to control the finances and operations of SEASALT.

22.     By virtue of having regularly held and/or exercised the authority to: (a) hire and fire employees of SEASALT; (b) determine the work schedules for the employees of SEASALT; and (c) control the finances and operations of SEASALT, DUPOUX is an employer as defined by 29 U.S.C. 201 *et. seq.*

## COVERAGE

23.     At all times material hereto, Plaintiff was an "employee" of Defendants within the meaning of FLSA.

24.     At all times material hereto, Defendants were the "employers" within the meaning of FLSA.

25.     Defendants were, and continue to be, "employers" within the meaning of FLSA.

26.     At all times material hereto, SEASALT was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA.  Specifically, Defendants regularly received a variety of food products, ingredients, and beverages from out of state suppliers, among other items.

27.     At all times material hereto, SEASALT was, and continues to be, an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

28.     Based upon information and belief, the annual gross revenue of Defendants was

in excess of $500,000.00 per annum during the relevant time periods.

29.    At all times material hereto, Defendants had more than two (2) employees.

30.    At all times material hereto, Defendants had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, including meal ingredients, finished food products, soft drinks, alcoholic beverages, kitchen equipment and various other tools and materials necessary and integral to Defendants' business operations.

31.    At all times material hereto, Plaintiff was "engaged in commerce" and subject to individual coverage under the FLSA. Specifically, throughout his employment, and as part of his duties for Defendants, Plaintiff regularly processed credit card transactions with credit card companies, banks and third-party service providers that were located outside the State of Florida.

32.    At all times material hereto, Plaintiff was engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA.

33.    At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendants.

## STATEMENT OF FACTS

34.    Defendants own and operate a seafood restaurant located in Miami, Florida.

35.    Defendants employed and/or continue to employee well over fifty (50) servers, host(esses), bussers, runners, cooks, and bartenders, throughout the class period.

36.    On or about November 2013, Defendants hired Plaintiff to work as an hourly paid, non-exempt employee.

37.    Plaintiff's regular hourly rate was composed of $8.50 in hourly wages, in

combination with a portion of service charges which Plaintiff and other tipped employees received from Defendants' patrons.

38.     Throughout Plaintiff's employment, Defendants unilaterally imposed a minimum nondiscretionary gratuity on each customer's bill, equal to 18% of the amount of each customer's bill.

39.     Payment of the 18% minimum gratuity of service charge was mandatory, although Defendants' patrons had the option of tipping Plaintiff and Defendants' other employees additional amounts for the services they provided.

40.     At all times relevant hereto, Defendants referred to the nondiscretionary 18% service charge solely as a "gratuity" on all customers' bills.

41.     Due to Defendants' failure to identify the nondiscretionary 18% service charges as same, Defendants' customers were led to believe that such amounts were tips, to be distributed to Defendants' "tipped" employees in their entirety.

42.     Defendants did not post any information regarding the nondiscretionary service charges anywhere in the restaurant/bar, on their menus, or on their website.

43.     Because Defendants failed to disclose the true nature of the service charge to any of their patrons, patrons were led to believe that the nondiscretionary 18% service charge was, in actuality a tip, included on their check by Defendants.

44.     Believing that the 18% service charge was in actuality a tip that Plaintiff would receive, Defendants' patrons often failed to tip Plaintiff amounts that they otherwise would have, had they known Defendants retained a substantial portion of same.

45.     On the rare occasion when a customer asked whether Plaintiff received the full nondiscretionary 18% service charge Plaintiff told them he did not.  On virtually all of these

occasions, upon learning of the true nature of the service charge, the patrons would separately tip Plaintiff, above and beyond the service charges included in their bill, so that he would receive his proper gratuity.

46.     Plaintiff was paid only a portion of the mandatory 18% Defendants unilaterally imposed on each customer's bill.

47.     Based on Defendants' representations to the general public, and more specifically to their patrons who ate and drank in their restaurant, consumers were led to believe that the 18% gratuity constituted a "tip" that was distributed to Defendants' tipped employees.

48.     Upon information and belief, Defendants represented to the general public, the Internal Revenue Service ("IRS"), and their workers compensation insurance carrier, among others, that the aforementioned 18% minimum gratuity on each patron's check was a "tip" and not a "service charge."

49.     For example, Defendants did not include amounts received from their patrons from the aforementioned 18% minimum gratuity in calculating their revenues, as reported to the IRS in 2013.

50.     Similarly, Defendants failed to include any portion of the 18% nondiscretionary service charges paid to its employees, including Plaintiff, in "wages" they reported to the IRS or to their workers compensation carrier, when they reported same to the IRS and their workers compensation carrier, both under the penalty of perjury.

51.     As a result of Defendants' representations to the general public, their patrons/consumers, the IRS, and/or their workers compensation carrier, Defendants received a monetary benefit, because they received and kept monies from unsuspecting patrons, and then failed to pay corporate income tax on same, and paid artificially low workers compensation

insurance premiums.

52.     Defendants failed to report any portion of the aforementioned 18% gratuities paid to its tipped employees on such tipped employees' tax forms that they submitted to the IRS, or on Defendants' application for workers compensation insurance coverage.

53.     Based on their sworn representations to their tipped employees, including Plaintiff, the IRS and their workers compensation carrier, that portions of the aforementioned 18% minimum gratuity charge paid to their tipped employees did not constitute "revenues" or "wages," but rather constituted "tips," Defendants are judicially estopped from claiming that such amounts were actually "revenues" or "wages" in this case.

54.     At various times material hereto, Plaintiff worked for Defendants in excess of forty (40) hours within a work week.

55.     Plaintiff was paid at a rate of $12.75 per hour for the hours he worked over forty (40) in a workweek.

56.     Defendants failed to include any portion of the 18% service charges they paid to Plaintiff in the calculation of Plaintiff's regular rate for purposes of calculating Plaintiff's overtime compensation.

57.     Defendants failed to include any portion of the 18% service charge they paid to Plaintiff in the calculation of Plaintiff's regular rate for purposes of calculating Plaintiff's overtime compensation, despite the fact that the payment of such amounts was nondiscretionary and made pursuant to Plaintiff's written employment agreeement with Defendants.  *See* At-Will Employment Agreement, attached hereto as **EXHIBIT A** at **II(B)**.

58.      Defendants failed to include any portion of the nondiscretionary 18% service charges they paid to Plaintiff in the calculation of Plaintiff's regular rate for purposes of

8

calculating Plaintiff's overtime compensation, because they treated such payments as "tips" paid by their patrons.

59.     At all times material hereto, Defendants treated the portion of the 18% charge paid out to Plaintiff as "tips." *See* Sample Paystub, attached hereto as **EXHIBIT B**.

60.     Throughout Plaintiff's employment, Defendants characterized the nondiscretionary 18% charge as a "tip" so that Defendants could attempt to avoid complying with Federal and state laws including, but not limited to, the failure to pay Federal payroll taxes and state unemployment taxes.

61.     Despite characterizing the 18% as a "tip," in an attempt to pay less federal and state taxes, Defendants refused to pay Plaintiff the full 18% service charges earned.

62.     Throughout his employment, Defendants failed to compensate Plaintiff at a rate of time and one-half Plaintiff's properly calculated regular rate for all hours worked in excess of forty (40) hours in a single work week.

63.     Plaintiff should be compensated at the rate of one and one-half times Plaintiff's properly calculated regular rate for all hours worked in excess of forty (40) hours in a single work week, as required by the FLSA.

64.     Defendants were/are required to include amounts they paid Plaintiff from the 18% service charges in his regular rate, for purposes of calculating his overtime compensation.

65.     Defendants failed to include amounts they paid Plaintiff from the nondiscretionary 18% service charges in his regular rate, for purposes of calculating his overtime compensation, as required by the FLSA.

66.     Based on Defendants' representations to third-parties that the monies that constituted the 18% minimum gratuity were "tips," Defendants have been unjustly enriched, to

the detriment of Plaintiff.

67.     Defendants' knowing misrepresentation to its patrons/customers and its Servers, including Plaintiff, that the 18% minimum gratuity was a "tip," and their retention of portions of same nonetheless, constitutes a fraudulent business practice, which illegally denied Plaintiff and Defendants' other tipped employees the fruits of their labor.

68.     Defendants have violated Title 29 U.S.C. §207, the Florida Deceptive and Unfair Trade Practices Act  ("FDUPTA"), Fla. Stat. § 501.204, and Florida common law from at least November 2013, and continuing through May 2014, in that:

      a.     Plaintiff worked in excess of forty (40) hours per week for the period of employment with Defendants;

      b.     Insufficient payments or provisions for payment have been made by Defendants to properly compensate Plaintiff at the statutory rate of one and one-half times Plaintiff' regular rate for those hours worked in excess of forty (40) hours per work week, as provided by the FLSA;

      c.     Defendants failed to maintain proper time records as mandated by the FLSA;

      d.     Defendants engaged in deceptive and unfair trade practices in violation of the FDUPTA, and to the detriment of Plaintiff; and

      e.     Defendants have been unjustly enriched because they have collected tips from their patrons that were intended for their tipped employees, based on work that the tipped employees performed, and have impermissibly retained such tips, to the detriment of Plaintiff and their other tipped employees.

69.     Plaintiff has retained the law firm of MORGAN & MORGAN, P.A. to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiff and the class members were all paid in a similar manner, base wages plus a portion of the service charges, and performed the same or similar job duties as one another in that they served Defendants' patrons food and beverages.

71.     Plaintiff and the class members were subjected to the same pay provisions in that they were all paid hourly, in combination with a portion of tips which Plaintiff and the class members received from Defendants' patrons.

72.     For those hours Plaintiff and the class members worked in excess of forty (40) each workweek, Defendants failed to include any gratuity in the calculation of Plaintiff and the class members' overtime compensation.

73.     Defendants were required to include the additional gratuity amounts that each Plaintiff and the class members received in their regular rate calculations for purposes of calculating overtime.

74.     The result of Defendants' failure to include Plaintiff and the class members' gratuity in their regular rate calculation was a failure to pay Plaintiff and the class members the required overtime premiums due under the FLSA.

75.     Defendants' failures in this regard resulted from a common policy or practice wherein Defendants improperly calculated the class members' regular rate.

76.     This policy or practice was applicable to Plaintiff and the class members.

77.     Application of this policy or practice does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit.  Rather, the same policy or practice

11

which resulted in the non-payment of overtime to Plaintiff applied, and continues to apply, to all class members.  Accordingly, the class members are properly defined as:

> **All "Tipped Employees" who worked for Defendants within the last three (3) years who were not compensated at the required overtime rates due under the FLSA.**

78.     Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay proper overtime with respect to Plaintiff and the class members.

79.     Defendants did not act in good faith or reliance upon any of the following in formulating their pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

80.     Defendants have acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

81.     Defendants have failed to maintain accurate records of Plaintiff and the class members' work hours in accordance with the law.

## CLASS ALLEGATIONS

82.     Plaintiff sues on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

83.     Plaintiff brings his FDUTPA and unjust enrichment claims on behalf of all persons who were employed by Defendants at any time since October 2009, to the entry of judgment in this case (the "Class Period"), who were employed by Defendants, and who received a portion of the mandatory 18% gratuity charge Defendants unilaterally imposed on each customer's bill.

12

84.     The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are between 50 and 100 members of the Class during the Class Period.

85.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

86.     The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

87.     Specifically, Defendants improperly retained a portion of all of the class members' tips.

88.     Application of this policy or practice does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit.  Rather, the same policy or practice which resulted in Defendants' improper retention of monies applied, and continues to apply, to all class members.  Accordingly, the class members are properly defined as:

**All  employees who worked for Defendants within the last five (5) years and who received a portion of the mandatory 18% gratuity charge Defendants unilaterally imposed on each customer's bill, as part of their compensation.**

89.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

90.     Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

91.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.     Whether Defendants represented to the IRS, their workers compensation carrier, and/or federal and state tax authorities that the 18% service charge was a "tip;"

b.     Whether Defendants represented to the general public and their customers that the 18% gratuity constituted a "tip" that was distributed solely to Defendants' "Tipped Employees;"

c.     Whether Defendants are judicially estopped from now claiming the 18% gratuity is a "wage" based on Defendants' sworn misrepresentations;

d.     Whether Defendants have received improper monetary benefits by virtue of their misrepresentations;

e.     Whether Defendants have been unjustly enriched, to the detriment of Plaintiff, by virtue of their misrepresentations;

f.     Whether Defendants' knowing misrepresentation that the 18% charge was a "tip" constitutes a fraudulent and deceptive business practice; and

g.     Whether Defendant received an unfair competitive advantage over their competitors by virtue of Defendants' misrepresentations.

## COUNT I
## VIOLATION OF 29 U.S.C. §207 OVERTIME COMPENSATION

92.     Plaintiff re-alleges and re-avers paragraphs 1 through 91 of the Complaint, as if

fully set forth herein.

93.     From November 2013, and continuing through May 2014, Plaintiff worked in excess of forty (40) hours per week for which Plaintiff was not compensated at the statutory rate of one and one-half times Plaintiff's properly calculated regular rate for all hours worked in excess of forty (40) hours in a single work week.

94.     Defendants' failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay, resulted from Defendants' failure to include all regular rate compensation (i.e. the portion of the nondiscretionary service charges he received) when calculating Plaintiff's overtime rate each week.

95.     Plaintiff was, and is, entitled to be paid at one and one-half times Plaintiff's properly calculated regular rate for all hours worked in excess of forty (40) hours in a single work week.

96.     At all times material hereto, Defendants failed, and continue to fail, to maintain proper time records as mandated by the FLSA.

97.     Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff at Plaintiff's properly calculated regular rate for all hours worked in excess of forty (40) hours in a single work week, when they knew, or should have known, such was, and is, due.

98.     Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

99.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered, and continues to suffer, damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

100.     Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

101.     At all times material hereto, Defendants failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, with respect to those similarly situated to the named Plaintiff by virtue of the management policy, plan or decision that intentionally provided for inadequate overtime compensation of such employees at a rate less than time and one-half Plaintiff's regular rate for all overtime hours worked.

**COUNT II**
**UNJUST ENRICHMENT**
**(pled in the alternative to Count I)**

102.     Plaintiff re-alleges and re-avers paragraphs 1 through 91 of the Complaint, as if fully set forth herein.

103.     This Court has supplemental jurisdiction over Plaintiff's unjust enrichment claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's unjust enrichment claims form a part of the same case or controversy and arise out of the common nucleus of operative facts as Plaintiff's overtime claims.

104.     As this Court has held, the FLSA does <u>not</u> provide any remedy for Plaintiff to recover the money that Defendants represented to their patrons, taxing authorities, and their workers compensation carrier to be "tips," because Defendants did not take a "tip credit" with respect to Plaintiff and its other employees similarly situated.  *See* D.E. 48 at 2-8.

105.     Thus, this claim is not and cannot be predicated on any rights created by the FLSA.

106.     The FLSA does not provide an adequate remedy to Plaintiff to recover the money that Defendants represented to their patrons, taxing authorities, and their workers compensation carrier to be "tips," because Defendants did not take a "tip credit" with respect to Plaintiff and those

employees similarly situated.  *See id.*

107.   For this reason, there is no adequate legal remedy for Plaintiff to seek the recovery of money that Defendants represented to their patrons, taxing authorities, and their workers compensation carrier to be "tips."

108.   As a result of Plaintiff's work, Defendants received a nondiscretionary 18% service charge, on top of the food and beverages they sold to each of their customers whom Plaintiff served.

109.   Defendants failed to distribute to Plaintiff the full 18% gratuity earned by his labor.

110.   Defendants have been unjustly enriched as a result of their retaining portions of the nondiscretionary 18% service charge, paid by Defendants customers to Plaintiff, while Defendants simultaneously treated such amounts as "tips" for tax purposes and for purposes of obtaining workers compensation insurance.

111.   It would be unjust to allow Defendants to enjoy the fruits of Plaintiff's labor without proper compensation, based on Defendants' assertion that the nondiscretionary 18% gratuities added to each customer's bill was a service charge, in light of the fact that they reported to the IRS that such amounts were "tips" and paid less taxes as result.

112.   It would be unjust to allow Defendants to enjoy the fruits of Plaintiff's labor without proper compensation, based on Defendants' assertion that the nondiscretionary 18% gratuities added to each customer's bill was a service charge, in light of the fact that they reported to their workers compensation carrier that such amounts were "tips" and paid less insurance premiums as result.

113.   It would be unjust to allow Defendants to enjoy the fruits of Plaintiff's labor without proper compensation, based on Defendants' assertion that the nondiscretionary 18% gratuities added to each customer's bill was a service charge, in light of the fact that Defendants' customers

would have tipped Plaintiff amounts in addition thereto, had Defendants disclosed the true nature of the service charges.

114.    Plaintiff's unjust enrichment claim seeks the repayment of Plaintiff's 18% gratuity which was improperly retained by Defendants.

## COUNT III
## VIOLATION OF FDUTPA
### (pled in the alternative to Count I)

115.    Plaintiff re-alleges and re-avers paragraphs 1 through 91 of the Complaint, as if fully set forth herein.

116.    This Court has supplemental jurisdiction over Plaintiff's FDUTPA claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims form a part of the same case or controversy and arise out of the common nucleus of operative facts as Plaintiff's federal overtime claims.

117.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits a very broad range of activities. FDUTPA makes it unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. Courts have regarded this prohibition as "extremely broad" when deciding whether a defendant's activities fall within it. *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1134, 1147 n. 11 (M.D.Fla.2007) (internal quotation marks omitted). Moreover, § 501.211(2) "provides that any person who has suffered a loss as a result of such practices may commence a private action for actual damages and possibly attorneys' fees and court costs.... A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id*. at 1145. And because § 501.201(2) was amended in 2001 to replace the word consumer with the word person, the legislature made clear that a person could sue

under § 501.211(2) even though the unlawful practices did not involve a consumer transaction. *Id.* at 1145–47.

118.    A business which fails to pay proper payroll taxes constitutes an unfair method of competition because the business would be paying less taxes than a competing business that follows the tax laws and therefore would have more money to use to best those competing businesses. *Seijo v. Casa Salsa, Inc*., 2013 WL 6184969 (S.D. Fla. 2013).

119.    Throughout Plaintiff's employment, Defendants characterized the 18% service charge as a "tip" so that Defendants could attempt to avoid complying with Federal and state laws including, but not limited to, the failure to pay Federal payroll taxes and state unemployment taxes.

120.    The services Plaintiff provided to Defendants and Defendants' customers constitute "trade of commerce" under the FDUTPA.

121.    The actions of Defendants as set forth above in characterizing the 18% gratuity as a "tip" are an unfair and deceptive trade practice prohibited by the FDUTPA, because consumers and Defendants' tipped employees alike were deceptively led to believe that the 18% gratuity was payable entirely to their tipped employees, but in fact it was not.

122.    As a result of this deceptive trade practice, Defendants' customers tipped Plaintiff and those employees similarly situated to Plaintiff  nothing, or less than they would have if the true nature of Defendants' service charges had been properly disclosed to them.

123.    Defendants characterized the 18% service charge as a "tip" to intentionally deceive their patrons and to circumvent tax law in bad faith.

124.    As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff has suffered damages, because he received less compensation for his work

than he would have, if Defendants had disclosed the true nature of their service charges.

125.   Pursuant to the FDUTPA, Plaintiff demands judgment against Defendants for damages attributable to Defendants' unfair and deceptive trade practices in an amount to be determined by this Court, together with interest, costs, attorneys' fees as provided for by Fla. Stat. §501.211, and for any and all other relief this Court deems just and proper under the circumstances.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants:

a.   Certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and his counsel to represent the Class;

b.   Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and his counsel to represent the Collective Action members;

c.   Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

d.   Awarding Plaintiff the declaratory relief sought herein;

e.   Awarding Plaintiff overtime compensation in the amount due to him for

Plaintiff' time worked in excess of forty (40) hours per work week;

f.   Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

g.   Awarding Plaintiff repayment of the 18% gratuity which was improperly retained by Defendants;

h.   Awarding Plaintiff reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b) and/or Fla. Stat. §501.211;

i.   Awarding Plaintiff pre-judgment interest;

j.   Granting Plaintiff an Order, on an expedited basis, allowing him to send Notice of this action, pursuant to 216(b) and/or FRCP 23, to those similarly situated to Plaintiff; and

k.   Ordering any other further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demand trial by jury on all issues so triable as a matter of right by jury.

Dated: December 16, 2014

Respectfully Submitted,

**/s/ AMANDA E. KAYFUS**
Amanda E. Kayfus, Esq.
Florida Bar No. 92805
Andrew R. Frisch, Esq.
Florida Bar No. 27777
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Ste. 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile:  (954) 327-3013
E-mail: AKayfus@forthepeople.com
E-mail: AFrisch@forthepeople.com

Trial Counsel for Plaintiff