UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

CASE NO. 14-22852-CV-UNGARO

JORGE GUTIEREEZ, et al.

    Plaintiffs,
vs.

SEASALT AND PEPPER, LLC, CARLOS
MIRANDA, AND STEPHANE DUPOUX,

    Defendants.

**DEFENDANTS SEASALT AND PEPPER, LLC, CARLOS MIRANDA
AND STEPHANE DUPUOUX'S MOTION DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

    Defendant, Seasalt and Pepper, LLC ("Seasalt and Pepper"), by and through undersigned counsel and pursuant to L. R. 7.1 and Federal Rule of Civil Procedure 12(b)(6), asks that the Court enter an order dismissing Plaintiff Jorge Gutierrez's ("Gutierrez") Second Amended Complaint ("SAC") in its entirety and submit this Memorandum of Law, in support thereof, as follows:

**I.   INTRODUCTION**

    In the Second Amended Complaint, Plaintiff Gutierrez changes his story for the third time. He now claims that the restaurant Seasalt and Pepper ("Restaurant") violated section 207 of the FLSA by failing to include the full amount of the eighteen percent (18%) mandatory service charge the Restaurant collected from its patrons in calculating his regular rate of pay for purpose of the FLSA overtime requirements — **Not** that the Restaurant failed to include his commission from the mandatory service pool in calculating his regular rate of pay in violation of *See generally Complt.*, [ECF No. 1], or that the Restaurant failed to pay him the full amount of 18% discretionary gratuity

it collected from its customers which he argued that he was entitled to keep under 29 C.F.R. §531.52 [First Amended Complaint, ECF No. 41].

The only new legal theory that Plaintiff advances in SAC is that Defendants were unjustly enriched and engaged in unfair and deceptive trade practices by failing to pay the full amount of the mandatory service charge to Plaintiff when they purportedly represented to the Restaurant's patrons that the service charge was imposed in lieu of the discretionary tip that are customarily given to the service staff in the hospitality industry.

For the reasons stated below, Plaintiff's Hail-Mary attempt to make a viable claim under the FLSA as well his state law claims should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

Plaintiff began working as a bartender at the Restaurant on November 4, 2013. SAC at ¶36 and Ex. A to SAC.  Section II of the At-Will Employment Agreement ("Employment Agreement") which is attached to SAC as Exhibit "A," is titled Compensation and states:

> A. **Base Compensation.** Employee shall receive a base pay of Eight Dollars and Fifty Cents ($8.50) per hour. Employer shall deduct or withhold from compensation any and all sums required for federal income, social security taxes, and all state and/or local taxes.
>
> B. **Commission.** As additional compensation for services to be rendered under this Agreement, Employee shall be entitled to a commission income on the following basis: Service Charge: As additional compensation for services to be rendered under this Agreement, **Employee shall be entitled to Service Charge pool income of 3.5 points** of all Restaurants Food & Beverage Sales Pool under 18% Service Charge per shift basis + Individual Direct Sales Service Charges and Additional Gratuities while working as BARTENDER and **Employee shall be entitled to Service Charge pool income of 5 points** of all Restaurants Food & Beverage Sales Pool under 18% Service Charge per shift basis while working as Mixologist on the Floor Table side. Payment of Service Charge shall be made on the regular payroll cycle.

*See* Ex. A to SAC (Section II). Plaintiff was in fact paid an hourly wage of $8.50 as well as a portion of the service charges which he and other tipped employees received from the eighteen

percent (18%) mandatory service charge that the Restaurant collected from its patrons. *Id.* at ¶¶37 – 38. Plaintiff was paid a portion of the mandatory service charge for the entire time he worked for the Restaurant. *Id.* at ¶47. Plaintiff often worked more than forty (40) hours within a workweek and was paid a rate of $12.75 for every hour he worked in excess of forty (40) hours in a workweek. *Id.* ¶¶45 – 55. By way of example, Plaintiff attached three consecutive pay stubs for the pay periods starting on January 18, 2014 and ending on March 2, 2014, as Exhibit "B" to SAC, which show that:

| Pay Period | Hours Worked | Compensation |
|---|---|---|
| 01/18/2014 – 02/02/2014 | 103.00 hours | Regular pay:    $ 680.00<br>Overtime:         $ 293.25<br>Service charge: $3105.49<br>Gross pay:        $4078.74 |
| 02/13/2014 – 02/16/2014 | 97.30 hours | Regular pay:    $ 680.00<br>Overtime:         $ 220.58<br>Service charge: $2552.19<br>Gross pay:        $3452.77 |
| 02/17/2014 – 03/02/2014 | 66.00 hours | Regular pay:    $ 561.00<br>Service charge: $1919.68<br>Gross pay:        $2480.68 |

Plaintiff Gutierrez contends that Defendants violated the FLSA overtime requirements by failing to compensate him at the statutory rate of one and one-half times his regular rate of pay for each hour he worked in excess of the forty (40) hours workweek which he claims results from the Restaurant's failure to include the portion of the nondiscretionary service charges he received in calculating his regular rate of pay. SAC at ¶94. Plaintiff also alleges that Defendants were unjustly enriched because they retained a portion of the eighteen percent (18%) service charge which caused him to receive a lesser compensation that what he would have received had they been apprised of the true nature of the service charge. *Id.* at ¶113. Finally, Plaintiff claims that

3

Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") by mischaracterizing the eighteen percent (18%) mandatory service charge as a tip which resulted in the Restaurant's customers leaving him nothing or a small tip that they would have had they been apprised of the true nature of the service charges. *Id.* at ¶¶122 – 124.

For the reasons stated below, Plaintiffs' claims should be dismissed with prejudice.

### III. APPLICABLE STANDARD

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two pronged approach in its application of the holdings in *Ashcroft* and *Twombly*. First, "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 669). In applying these principles, the Court can infer "'obvious alternative explanation[s],' which suggest lawful

4

conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting *Iqbal*, 556 U.S. 680-81). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability.'" *Chaparro v. Carnival Corp.*, 693 F. 3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth and must grant the motion to dismiss for plaintiff's failure to carry it pleading burden. *Mamani v. Berzain*, 654 F. 3d 1148, 1153–54 (11th Cir. 2011).

Specifically in the context of FLSA claims, the determination of whether Plaintiff's position is exempt from the FLSA overtime requirements can be made on a motion to dismiss if the issue of whether the exemption applies can be determined from the pleadings. *Nieves v. Insurance Care Direct, Inc.*, 2010 WL 376279 at *2 (S.D. Fla. Jan. 25, 2010) (Defendant's exemption claim under section 207(i) may be decided on a motion to dismiss if the issue of whether the exemption applies can be determined from the pleadings); *see also Chen v. Major League Baseball*, 2014 WL 1230006 at *4 (S.D. N.Y. Mar. 25, 2014) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F. 3d 67, 74 (2d Cir. 1998)) (same).

IV.  **LEGAL ARGUMENT**

   A. **Plaintiff's Position Is Exempt From The FLSA's Overtime Requirements.**

Plaintiff Gutierrez claims that the Restaurant violated the FLSA overtime requirements by miscalculating his regular rate of pay which resulted from its failure to include his share of the eighteen percent (18%) service charge it collected from its customers.

Section 207 of the FLSA governs the calculation of overtime wages. That statute provides states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in

> the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Employees of a retail and/or service establishments are exempt from the overtime requirements in section 207(a)(1), provided that they meet the following conditions:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

Plaintiff Gutierrez does not dispute that the Restaurant is a service establishment for purposes of the FLSA. SAC at ¶34 (Defendants own and operate a seafood restaurant in Miami, Florida). In order for the service establishment exemption to apply, the Restaurant must show that (1) Plaintiff was paid a regular rate of pay that exceeds the federal minimum wage of $8.25 provided for in section 206 of the FLSA, and (2) more than half of his compensation for the representative period is derived from commissions on the goods and services sold by the Restaurant. 29 U.S.C. § 207(i). "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *Williams v. R. W. Cannon, Inc.*, 2008 WL 4097613 at *16 (S.D. Fla. Sept. 4, 2008) (citing *Kohlheim v. Glynn County, Ga.*, 915 F. 2d 1473, 1480 (11th Cir. 1990)).

As shown by the pay stubs attached as Exhibit "B" to SAC, Plaintiff's regular rate of pay during the representative period from January 18, 2014 to March 2, 2014 was $39.60 for the pay

6

period of January 18, 2014 to February 2, 2014, $35.49 for the period of February 3, 2014 to February 16, 2014, and $37.59 for the period of February 17, 2014 to March 2, 2014 respectively.[1] This means that during the representative period from January 18, 2014 to March 2, 2014, Plaintiff's regular rate of pay was consistently well above four times the federal minimum wage.

Turning to the second prong of the service establishment exemption, the pay stubs clearly show that Plaintiff derived 76.13% of his income during the pay period of January 18, 2014 to February 2, 2014, 73.92% of his income during the pay period of February 3, 2014 to February 16, 2014, and 77.39% of his income during the pay period of February 17, 2014 to March 2, 2014 from his commission from the mandatory service pool. This undisputedly establishes that Plaintiff's position was exempt from the FLSA overtime requirements under the service establishment exemption provided for in section 207(i).

Plaintiff attempts to sidestep this argument by arguing that the eighteen percent (18%) mandatory service charge was a gratuity because the Restaurant described it as a gratuity on customers' bills. SAC at ¶40. Under the FLSA, a tip is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." *Starr v. Chicago Cut Steakhouse, LLC*, 2014 WL 7146061 at *3, n. 6 (N.D. Ill. Dec. 15, 2014) (citing 29 C.F.R. §531.52 and *Reich v. ABC/York–Estes Corp.*, No. 91 C 6265, 1997 WL 264379, at *4–5 (N.D. Ill. May 12, 1997). FLSA regulations distinguish this from a "service charge," which is "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment." 29 C.F.R. § 531.55(a). A mandatory service charge is not a tip, and cannot be used

---

[1] The regular rates of pay of $39.60 for the period of January 18, 2014 to February 2, 2014, results from dividing his gross pay of $4,078.74 by the 103 hours worked during that period, of $35.49 for the period of February 3, 2014 to February 16, 2014, by dividing the gross pay of $3,452.77 by the 97.3 hours worked during that period and of $37.58 for the period of February 17, 2014 to March 2, 2014, by dividing gross pay of $2,480.68 by the 66 hours worked during that period.

to satisfy the tip-credit provisions of the FLSA. *Id.*

As a preliminary matter, Plaintiffs notably describes the eighteen percent (18%) service charge as a nondiscretionary and/or mandatory service charge at least **thirteen** times in the SAC. SAC at ¶¶37, 38, 39, 40, 41, 46, 50, 58, 60, 94, 108, 111, and 113. In addition, section II of the Employment Agreement explicitly acknowledges that Plaintiff will receive a commission and/or share of the mandatory service charge pool. Plaintiff does not dispute this fact. *See* SAC at ¶37 (Plaintiff was paid an hourly rate of $8.50 and a portion of the service charges collected by the Restaurant). *Nascembeni v, Quayside Place Partners, LLP*, 2010 WL 2351467 at *2 (S.D. Fla. June 11, 2010) (citing *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F. 2d 1173, 1174-77 (7th Cir. 1987)) ("[a] 'service charge' added by a hotel to every banquet bill, and then distributed (in whole or in part) to its banquet staff, is properly classified as a "commission," and not a gratuity, under the FLSA"). The fact that the Restaurant refers Plaintiff's commissions from the mandatory service charge pools as tips on his pay stubs is irrelevant because "[a] 'service charge' is a commission despite the fact that the parties may describe it colloquially as a gratuity or a tip." *Id*; *Starr, supra*, 2014 WL 7146061 at *3 n. 6 ("Ordinarily, a party's characterization of a fee or charge would not control its FLSA treatment").

As demonstrated above, the allegations in the SAC, which this Court is required to accept as true on a motion to dismiss, conclusively establish that the service establishment exception applies. Plaintiff's regular rate of pay during the representative period from January 18, 2014 to March 2, 2014 ranges from $35.49 to $39.60, nearly five times the federal minimum wage, and the portion of his income derived from his commission from the mandatory service charge pool ranged from 73.92% to 77.39%, well over the 50% requirement in section 207(i). As Judge Marcia Cooke explained in *Nascembeni*, "the service charge is properly construed as a commission and must be factored into the calculation. Accordingly, Ms. Nascembeni is within the commissioned

8

work exemption as detailed in 29 U.S.C. § 207(i). As an exempted employee, the Hotel was not required to pay Ms. Nascembeni overtime wages. For these reasons, summary judgment is granted in favor of the Defendants as to overtime wage claims." *Nascembeni, supra*, 2010 WL 2351467 at *3.

Accordingly, Count I of SAC fails as a matter of law.

### B. Plaintiff's Unjust Enrichment Claim Is Preempted By The FLSA.

In Count II, Plaintiff alleges that the Restaurant was unjustly enriched because it retained a portion of the service charge which it misrepresented to its patrons as a gratuity for Plaintiff and that customer would have likely left him a larger tip had they known that the Restaurant was going to retain a portion of the mandatory service charge. SAC at ¶113.

It is telling in this case that Plaintiff does not assert a claim for a breach of the Employment Agreement. Plaintiff presumably chose to sue for unjust enrichment because the record evidence clearly shows that the Restaurant complied with the compensation arrangement in the Employment Agreement. That Agreement explicitly requires the Restaurant to pay Plaintiff an hourly wage of $8.50 and 3.5 points of the eighteen percent (18%) service charge pool per shift. As demonstrated by the pay stubs attached as Exhibit "B" to SAC, that is precisely what the Restaurant did in this case.

Plaintiff's unjust enrichment claim ultimately ignores the Employment Agreement. He is, in essence, seeking to collect the full 18% service charge which clearly exceeds the compensation agreed upon by the parties in the Employment Agreement. Plaintiff cannot and does not dispute that fact. He cannot now claim quasi contractual damages that are inconsistent with the expressed term of the Employment Agreement. *Cunningham v. Am. Exp. Co.*, 2014 WL 6453604 (N.D. Fla. Nov. 17, 2014) (a claim for unjust enrichment based on the expressed terms of an employment agreement fails as a matter of law) (citing *Poe v. Levy's Estate*, 411 So.2d 253, 256 (Fla. 4th DCA

9

1982).

Quite apart from the fact that Plaintiff's claim is not supported by Florida law, the claim still fails because it is preempted by section 216 of the FLSA. Plaintiff argues that his unjust enrichment claim is not predicated on any rights created by the FLSA and that he is entitled to proceed on his unjust enrichment claim because the statute does not provide an adequate remedy at law. SAC at ¶¶105 – 106.

It is well-settled that Plaintiff's right to the full eighteen percent (18%) mandatory service charge, as Plaintiff would have it, must be either a statutory or a contractual one. Plaintiff cannot claim that he has a contractual right to the full amount of the service charge because to do so would be clearly contradicted by the expressed terms of the Employment Agreement. This means that the only way that Plaintiff can establish his entitlement to the full amount of the service charge is if he can show that he has a statutory right to collect that amount. Plaintiff does not and cannot cite to a single Florida or federal statute that grants him that right other than the FLSA. That is precisely what he pled in Count I of the SAC. As such, Plaintiff claim is preempted by section 216 FLSA that provides the exclusive remedy for its mandates. *Bouthner v. Cleveland Constr. Inc.*, 2011 WL 2976868, at *7 (D. Md. July 21, 2011) ("a plaintiff may not plead under a theory of unjust enrichment to avoid the statutory framework of the FLSA. Defendants' motion to dismiss Plaintiffs' unjust enrichment claim as it relates to any claim of failure to pay minimum wages or overtime under the FLSA is GRANTED").

A cursory review of the allegations in Count II makes this conclusion inescapable because the unjust enrichment claim is predicated on the Restaurant's purported failure to disburse all of the services which it collected from its customers under the auspices of gratuities to Plaintiff; such terms of art only carry legal significance under the FLSA. *Botello v. COI Telecom, LLC,* 2010 WL 3784202, at *4 (W.D. Tex. Sept. 21, 2010) (plaintiff's unjust enrichment claim was dismissed

10

because it was "predicated on [d]efendant's alleged failure to compensate her for hours worked in excess of 40 hours; a requirement imposed by the FLSA [and][t]he FLSA provides the exclusive remedy for violation of its mandates."

As such, Plaintiff's Unjust Enrichment fails as a matter of law.

### C.  Plaintiff Lacks Standing To Bring A FDUTPA Claim

In Count III, Plaintiff alleges that Defendant engaged in unfair and deceptive trade practices by representing to its customers that the eighteen percent (18%) service charge was a gratuity when caused customers to leave Plaintiff no or a smaller tip than they would have had they known that the Restaurant intends to retain a portion of the mandatory service charge. SAC at ¶¶ 121 – 122.

To maintain a private cause of action under FDUTPA, a plaintiff must show not only that the conduct complained of was unfair, unconscionable, or deceptive, but also that it has suffered actual damages proximately caused by the unlawful conduct. *Himes v. Brown & Co. Secs. Corp.*, 518 So.2d 937, 938 (Fla. 3rd DCA 1988) (noting that FDUTPA requires a plaintiff to suffer "actual damages proximately caused" by the defendant); Fla. Stat. §501.211 ("In any action brought by a person who has suffered a loss as a result of a violation of [the FDUTPA], such person may recover actual damages ...."). To achieve its goal of protecting consumers and businesses from unfair, unconscionable, or deceptive acts or practices, the FDUTPA must be "construed liberally." Fla. Stat. §501.202. Nevertheless, only consumers have standing to bring private suit under FDUTPA. *Cannova v. Breckenridge Pharm., Inc.*, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009) (only a consumer may bring private suit under FDUTPA); *Goodbys Creek, LLC v. Arch Ins. Co.*, 2008 WL 2950112, at *8 (M.D. Fla. July 31, 2008) (same); *Badillo v. Playboy Entertainment Group, Inc.*, 2006 WL 785707, at *6 (M.D. Fla. Mar. 28, 2006) (same).

Plaintiff relies on a 2001 amendment of section 501.211 of FDUTPA that replaced the

word "consumer" with the word "person" when referring to the ability to recover actual damages as a result of a violation of the statute. Plaintiff relies on that amendment and cites *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1147 n. 11 (M.D. Fla. 2007), for the proposition the amended section 501.211 is extremely broad to cover a vast array of non-consumer transactions. SAC at ¶117. Plaintiff's argument is simply wrong.

In *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339 (S.D. Fla. 2009), Judge Marra rejected that argument and stated that "the legislative intent of the 2001 amendment was to clarify that remedies available to individuals are also available to businesses, as opposed to creating a cause of action for non-consumers. *Id.* at 1349 (quoting Senate Staff Analysis and Economic Impact Statement, Florida Staff Analysis, SB 208, March 22, 2001, at p. 7). Judge Marra also disagreed with the holding in the *Furmanite* decision because it "did not analyze the legislative history of the amendment or rest on the interpretation given the statute by Florida state cases. Instead, [it] merely concluded that the replacement of the word "consumer" with "person" demonstrated a legislative intent to allow a broader base of complainants to seek damages. Because the legislative history of the amendment supports the contrary conclusion, the Court will not to follow this non-binding authority. Thus, Plaintiff, as a non-consumer, is not entitled to monetary damages under FDUTPA." *Id.*; *see also Dobbins v. Scriptfleet, Inc.,* 2012 WL 601145 at *4 (M.D. Fla. Feb. 23, 2012) (dismissing with prejudice plaintiff's FDUTPA claim because the statute does not apply in the pure employment context).[2]

Assuming *arguendo* that Plaintiff had standing under FDUTPA, the claim still fails because

---

[2] Plaintiff makes several references to the Restaurant's alleged failure to properly disclose the mandatory service charges to the Internal Revenue Service. This allegation, assuming it is true, is of no consequence because it is well-settled that Plaintiff lacks standing to bring a FDUTPA claim on behalf of the IRS. *Cf. Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1003 (9th Cir.1999) (two limited partners lacked standing to sue for alleged wrongful acts during tax collection from partnership).

the damages sought are the lost tips that Plaintiff would have received had the Restaurant's patrons been apprised of the true nature of the mandatory service charges. SAC at ¶124 (Plaintiff received less compensation that he would have had customers known about the true nature of the service charge which resulted from the Restaurant's alleged FDUTPA violation). Because these damages are, at best, speculative, Plaintiff FDUTPA claim fails as a matter of law. *Chow v. Chak Yam Chau*, 555 Fed App'x 842, 846 – 74 (11th Cir. 2014) (Plaintiff's FDUPTA claim fails as a matter of law because "[o]nly speculation connected the alleged illegal compensation practices to Mr. Chow's alleged damages").

Accordingly, Plaintiff's FDUTPA claim should be dismissed with prejudice.

## V.  CONCLUSION

Based on the foregoing, Defendants Seasalt and Pepper, LLC, Carlos Miranda and Stephane Dupoux respectfully ask that the Court enter an Order (i) dismissing Plaintiff Jorge Gutierrez's Second Amended Complaint in its entirety, and (ii) granting such further relief as is just and appropriate.

Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO, P.A.
*Counsel for Defendant Seasalt and Pepper, LLC*
Miami Tower
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 375-5428
By: _/s/ Beshoy Rizk_____
    ROBERT ZARCO
    Florida Bar No. 502138
    rzarco@zarcolaw.com
    ROBERT F. SALKOWSKI
    Florida Bar No. 903124
    rsalkowski@zarcolaw.com
    BESHOY RIZK
    Florida Bar No. 093808
    brizk@zarcolaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on December 23, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a notice of filing to the following attorneys:

Amanda Elizabeth Kayfus
Morgan & Morgan PA
600 N Pine Island Road
Suite 400
Plantation, FL 33324
954-318-0268
Fax: 954-327-3017
akayfus@forthepeople.com

Counsel for Plaintiffs

                                                      /s/ Beshoy Rizk